**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Don and Thelma Dillon, husband and wife,<br><br>        Plaintiffs,<br><br>vs.<br><br>State of Arizona; Department of Economic Security; Office of Licensing Certification & Regulation; Arizona Child Protective Services; Janice Mickens, an employee of Child Protective Services; Michelle Heermans, F/K/A Michelle Kohler, an employee of Child Protective Services; Mark Peterson, an employee of Child Protective Services; Victoria Stevens, and employee of Child Protective Services; Eric Hobson, an employee of Child Protective Services.<br><br>        Defendants. | No. CV 08-796-PHX-DGC<br><br>**ORDER** |

Plaintiffs move for partial summary judgment to establish liability for a violation of 42 U.S.C. § 1983. Dkt. #14. A response, objection, reply, and supplement have been filed. Dkt. ##32-35. For the following reasons, the Court will deny the motion.[1]

---

[1] Plaintiffs have requested oral argument. The request is denied because the parties have fully briefed the issues. *See* Dkt. ##2, 19, 32-35. Oral argument will not aid the Court's decision or result in unfair prejudice to Plaintiffs. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999); *see also* Fed. R. Civ. P. 78.

**I.     Background.**

  **A.     Procedural posture**.

  Plaintiffs are husband and wife residing in the city of Glendale in Maricopa County, Arizona. Defendants are agencies and employees of the State of Arizona. Defendants removed three foster children from Plaintiffs' care, without prior notice, on March 29, 2005. Dkt. ##2 at ¶¶ 28-32; 19 at ¶ 28. This incident was followed by Defendants' revocation of Plaintiffs' foster care license and reversal of that action by the Appeals Board of the Arizona Department of Economic Security. *See* Dkt. ##2 at ¶¶ 34-36; 32 at 32-33.

  Plaintiffs filed a complaint in Arizona Superior Court on December 20, 2007. *See* Dkt. #2. The complaint asserted five tort claims under Arizona law and violation of Plaintiffs' civil rights under 42 U.S.C. § 1983. Dkt. #2 at ¶¶ 64-96. Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441. Dkt. #1. Defendants then filed a motion to dismiss, which the Court granted in part by dismissing Plaintiffs' state law claims for failure to comply with Arizona's notice of claims statute. Dkt. ##6; 17 at 4-7.

  As Defendant's motion to dismiss was pending, Plaintiffs filed a motion for partial summary judgment on what is now their sole remaining cause of action: violation of § 1983. Dkt. #14. Plaintiffs seek to establish liability for three distinct violations of § 1983, and "an order declaring that the Department of Economic Security (hereinafter 'DES'), the Office of Licensing, Certification and Regulation (hereinafter 'OLCR'), and Child Protective Services (hereinafter 'CPS'), violated Plaintiffs' rights." *Id.*

  **B.     Facts**.

  Plaintiffs attended training for adoption and therapeutic foster care in April of 2002 at a private agency, and received a certificate of attendance as part of an effort to become foster parents. Dkt. ##14 at ¶ 14; 15-2 at 4. On January 16, 2004, the OLCR, a subdivision of the DES, granted Plaintiffs a license to operate as a foster home for one child. Dkt. ##15-3 at 2; 32 at 4. CPS, a separate subdivision of the DES, ultimately placed three young brothers in Plaintiffs' care after the OLCR increased Plaintiffs' license to three foster children on

January 16, 2005. Dkt. ##14 at 3; 32 at 3; 33 at ¶ 5. Defendant Heermans, a CPS employee, planned to make the brothers eligible for adoption. Dkt. #33 at ¶ 9. She disputes, however, that she told Plaintiffs that CPS was placing the brothers with Plaintiffs for adoption. Dkt. ##2 at ¶¶ 18-19; 33 at ¶ 9.

One of the brothers had special needs requiring a therapeutic environment. Dkt. #14 at 3-4; 33-2 at 10, 20. Plaintiffs had applied to become licensed as a therapeutic home, but State authorities had not yet processed their application at the time of the brothers' placement. Dkt. ##14 at 3; 33 at ¶ 12. The three brothers began to exhibit behavioral difficulties in Plaintiffs' home, which the parties attribute to different causes. *See* Dkt ##14 at 4; 33 at ¶ 4. While discussing these difficulties with Mr. Dillon in March of 2005, Defendant Mickens, a CPS employee, expressed her understanding that CPS would not remove the brothers from Plaintiffs' home absent evidence of abuse or neglect. Dkt. ##14 at 4-5; 33-2 at 9.

Following some confusion within CPS about whether Plaintiffs' home had a therapeutic rating, its employees, including Ms. Mickens, concluded that it did not. Dkt. #33-2 at 10-11. On March 29, 2005, CPS took two of the three brothers into custody at school. Shortly thereafter, Defendants Heermans and Hobson arrived unannounced at Plaintiffs' home to remove the third child. Dkt. ##14 at 5; 33 at ¶ 9-11. Mr. Dillon was home, but was reluctant to surrender the boy to CPS until he could call Ms. Mickens to discuss the removal because he believed it conflicted with her earlier statements regarding the placement. Dkt. ##14 at 5-6; 33-2 at 9-10. CPS employees called police to Plaintiffs' home. Dkt. ##14 at 5; 32 at 4. Mr. Dillon ultimately surrendered the child after speaking with Ms. Mickens on the phone and being assured that they would meet in person to resolve the matter. Dkt. ##14 at 5-6; 33-2 at 9-10.

CPS did not return the brothers to Plaintiffs' home, and the OLCR informed Plaintiffs on June 13, 2005 that the State had revoked their foster care license primarily due to Mr. Dillon's failure to cooperate with CPS. Dkt. ##14 at 6; 15-7 at 2-3; 32 at 4, 9. Plaintiffs contested this revocation on November 18, 2005 before an Arizona Administrative Law

Judge, who affirmed the OLCR's determination. Dkt. ##14 at 6; 32 at 9. The Appeals Board of the DES reversed on July 21, 2006, and subsequently affirmed its reversal. Dkt. ##14 at 6; 32 at 9. The Appeals Board determined that revocation of Plaintiffs' license was not authorized by Arizona law because the OLCR had not presented sufficient evidence to demonstrate that Mr. Dillon was disqualified as a foster parent, or that his reluctance to cooperate with CPS justified the revocation. Dkt. ##15 at ¶¶ 17(C); 33 at ¶¶ 17-18.

In this action, Plaintiffs argue that Defendants violated their due process rights under the Fourteenth Amendment to the United States Constitution by (1) removing the three brothers from Plaintiffs' foster care without prior notice or a hearing as required by A.R.S. § 8-515.05, (2) terminating Plaintiffs' relationship with the brothers as foster parents and prospective adoptive parents without a juvenile court's order contrary to A.R.S. § 8-113, and (3) improperly revoking Plaintiffs' foster care license contrary to Ariz. Admin. Code R6-5-5815 and 5816. Dkt #14 at 8-16. In moving for partial summary judgement, Plaintiffs argue that Defendants are barred by collateral estoppel and *res judicata* from contesting the findings of the Appeals Board. Dkt. #14 at 14-16.

**II.    Discussion.**

    **A.    Summary judgement under § 1983.**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute . . . of any State . . . , subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." In this Circuit, "the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Two elements of § 1983 are not disputed in this action. First, states and their agencies are not "persons" for purposes of § 1983. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007); *Hale v. Arizona*, 993 F.2d 1387, 1398 (9th Cir. 1993) (en banc). State officials sued in their individual capacity are "persons" for purposes of the statute. *See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). Because Plaintiffs can assert no § 1983 claim against the State and its agencies, the Court will consider Plaintiff's motion only with respect to the state employees named in the complaint. Second, there is no dispute that these employees acted under color of state law during the events described in the complaint. *See, e.g.*, Dkt. #19 at ¶ 96.

### B. Collateral estoppel and *res judicata*.

State law governs the application of collateral estoppel and *res judicata* to a state judgment. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990). In this case, the judgment sought to be enforced is from Arizona. Plaintiffs must show that the state employees named in their complaint are bound by the decision of the Appeals Board. *See State Compensation Fund v. Yellow Cab Co. of Phoenix*, 3 P.3d 1040, 1044, ¶ 14 (Ariz. Ct. App. 1999).

In Arizona, collateral estoppel occurs when (1) the issue to be litigated was actually litigated in a prior proceeding, (2) a final judgement was entered in the prior litigation, (3) the party against whom the doctrine is to be invoked had a full opportunity to litigate the issue,

1  (4) the party actually did litigate the issue, and (5) the issue was essential to a final judgment.
2  *See Garcia v. General Motors Corp.*, 990 P.2d 1069, 1073 (Ariz. Ct. App. 2000); *Circle K*
3  *Corp. v. Indus. Comm'n of Ariz.*, 880 P.2d 642, 645 (Ariz. Ct. App. 1993). Under the doctrine
4  of *res judicata*, a valid final judgment is conclusive with respect to a party or its privy as to
5  every issue decided and every issue that could have been decided. *Heinig v. Hudman*, 865
6  P.2d 110, 115 (Ariz. Ct. App. 1994); *accord Clark v. Bear Stearns & Co., Inc.*, 966 F.2d
7  1318, 1320 (9th Cir. 1992). "As the Arizona Supreme Court has recognized, generally a
8  person who is not a party to an action is not bound by the result." *Daystar Inv. v. Maricopa*
9  *County Treasurer*, 88 P.3d 1181, 1185 (Ariz. Ct. App. 2004) (quoting *Scottsdale Mem'l*
10 *Health Sys., Inc. v. Clark*, 759 P.2d 607, 612 (Ariz. 1988)); *see also Cochise Sanitary Servs.,*
11 *Inc. v. Corp. Comm'n*, 410 P.2d 677, 679 (Ariz Ct. App. 1966) (finding that *res judicata* and
12 collateral estoppel did not apply to a non-party to a proceeding resulting in a decree adverse
13 to the Arizona Corporation Commission – the doctrines applied only to the Commission).

14  In this case, the Appeals Board addressed whether revocation of Plaintiffs' license was
15 proper under Arizona law. Dkt. #16-9 at 7. Only the OLCR was a party. *Id.* at 2. The
16 individual defendants were not parties before the Appeals Board and did not have an
17 opportunity to litigate issues relating to the OLCR's licensing activities. Plaintiffs argue,
18 nonetheless, that the individual defendants are bound by the Appeals Board decision because
19 they are privies of the OLCR. Dkt. #34 at 2. The Court does not agree.

20  Plaintiffs' reliance on *Olson v. Morris*, 188 F.3d 1083 (9th Cir. 1999) is misplaced.
21 In *Olsen*, the Arizona Board of Psychologist Examiners revoked a psychologist's professional
22 license after he had performed an exorcism on a foster child. *Id.* at 1085. Instead of
23 appealing that decision to the state courts as he was permitted to do, the psychologist filed a
24 constitutional claim in federal court. The Ninth Circuit applied the doctrine of *res judicata*
25 because the psychologist – who was a party to the state proceeding – could have raised his
26 constitutional argument at the state level, but failed to do so. *Id.* at 1086-87.

27  Unlike *Olsen*, Plaintiffs in this case seek to invoke *res judicata* offensively against
28

- 6 -

1  defendants who were not parties to the Appeals Board proceeding. The individual defendants
2  are not privies of the OLCR for purposes of *res judicata* or collateral estoppel because they
3  are not employees of the OLCR and had no interest or involvement in the appeal other than
4  as witnesses. *See Aldrich*, 837 P.2d at 1183. Thus, Plaintiffs have not demonstrated that the
5  individual defendants are bound by the findings of the Appeals Board.

**C.   Plaintiffs' due process claims.**

In cases of procedural due process, "the deprivation of a constitutionally protected interest 'is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.'" *Humphries v. Los Angeles*, --- F.3d ---, 2009 WL 102101, *10 (9th Cir. 2009) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Courts assess procedural due process claims in two steps: "'the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Id.* (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Liberty interests can arise both from the Constitution and from state law. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "Stated simply, 'a State creates a protected liberty interest by placing substantive limitations on official discretion.'" *Thompson*, 490 U.S. at 462 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)).

**1.   Violation of A.R.S. § 8-515.05.**

Plaintiffs assert that Defendants' unannounced removal of the three brothers violated limitations on CPS's authority in A.R.S. § 8-515.05. That statute provides in relevant part that "[u]nless a child is removed from a licensed foster parent . . . to protect the child from harm or risk of harm . . . [or] to place a child in a therapeutic setting . . . the department shall inform the licensed foster parent of the department's intent to remove a child." *Id.* Plaintiffs argue that CPS made the unannounced removal in retaliation for Plaintiffs' complaints relating to the brothers' behavioral problems, and that CPS used the foster family's lack of a therapeutic rating as a mere pretext. *See* Dkt. #14 at 6. Defendants present evidence that they were

compelled to conduct the removal without notice due to Plaintiffs' non-therapeutic rating and out of concern for potential harm to the brothers. *See, e.g.*, Dkt. #33, ¶¶ 22, 24. This evidence creates a genuine issue of material fact for trial.[2]

### 2. Plaintiffs' rights as foster parents and prospective adoptive parents.

Plaintiffs argue that Defendants' actions abrogated their rights as foster parents and prospective adoptive parents. For at least two reasons, the Court cannot grant summary judgment on the basis of Plaintiffs' status as foster parents.

First, the Ninth Circuit has suggested that foster parents generally do not have a liberty interest in retaining their foster children. *See Backlund v. Barnhart*, 778 F.2d 1386, 1390 (9th Cir. 1985) (explaining that a state agency's use of its statutory discretion to terminate a foster relationship did not violate the foster parents' liberty interests because "[t]he relationship between . . . foster parent and foster child is a creature of . . . [the state's] child welfare statutes"). Plaintiffs' reliance on *Smith v. Org. of Foster Families for Equality and Reform*, 431 U.S. 816, 844-45 (1977), and *McLaughlin v. Pernsley*, 693 F. Supp. 318 (D. Pa. 1988), is not persuasive. In *Smith*, the Supreme Court never decided the question of whether foster parents have a distinct liberty interest in foster relationships. *See* 431 U.S. at 846 (stopping short of explaining what "liberty interest might otherwise exist in the foster family as an institution"). *Pernsley* held that Pennsylvania authorities wrongfully removed a black child from a white foster couple's home because the authorities failed to provide the couple with advance notice. 693 F. Supp. at 319-20, 327, 331. The court reasoned that Pennsylvania law mandated fifteen days' written notice prior to all removals, thereby creating "a liberty interest in favor of the McLaughlins deserving Due Process Clause protection." *Id.* at 325. Unlike the absolute statutory requirement in *Pernsley*, A.R.S. § 8-515.05 does not require CPS employees to provide families with notice prior to terminating foster relationships. To the

---

[2] Like their statutory argument, Plaintiffs contend that Defendants violated the DES's Children's Services Manual by removing the brothers without notice. *See* Dkt. #14 at 10-11. This contention also raises factual issues because the Manual requires notice "unless an emergency situation exists." *See* Dkt. ##14 at 10; 16-11 at 2.

- 8 -

1  contrary, CPS may cut these ties abruptly to place children in a therapeutic setting or to
2  protect them from possible harm, issues on which there is a factual dispute in this case.

3  Second, the parties disagree on factual issues potentially relevant to the liberty interest
4  determination. Defendants assert that the State of Arizona at all times had the right to legal
5  and physical custody of the boys under a court order of dependency. Dkt. #33, ¶ 28.
6  Plaintiffs, they claim, never had custody of the boys pursuant to a court order, but instead had
7  mere permissive custody through a foster care agreement with the State. *Id.* And as noted
8  above, the parties disagree on the true reasons for the removal of the boys. The Court
9  concludes that Plaintiff's claim based on their status as foster parents must be decided on the
10 basis of a more complete factual record.

11 Nor can the Court grant summary judgment on Plaintiffs' claim that they were
12 prospective adoptive parents. Arizona has special statutory and administrative procedures to
13 protect prospective adoptive parents: "[a] child who has been placed in a *certified adoptive*
14 *home* by any agency or the [DES] *shall not be removed* from the home except on order of the
15 juvenile court." A.R.S. § 8-113(A) (emphasis added). Additionally, "[d]uring the
16 probationary period or any extension, prospective adoptive parents who have complied with
17 the provisions of this chapter have . . . the right to physical custody of the child unless the
18 child is removed by order of the juvenile court after notice and a hearing." *Id.* at § 8-113(I).
19 Arizona defines a "prospective adoptive parent" as "a person who has applied to an adoption
20 entity *to become certified* to adopt a child," rather than a person possessing an actual
21 certification. *See* Ariz. Admin. Code R6-5-6501(35) (emphasis added).

22 The key question is whether Plaintiffs were in fact prospective adoptive parents under
23 Arizona law. Defendants present evidence disputing that the brothers' placement was
24 adoptive (*see* Dkt, #33-2 at 4-5, 11-12), and Plaintiffs have not presented undisputed facts
25 showing they were certified for adoption or were undertaking a certification process. Genuine
26 issues of material fact therefore remain regarding Plaintiffs' status as certified or uncertified
27
28

- 9 -

prospective adoptive parents.[3]

### 3. Revocation of Plaintiffs' foster care license.

Finally, Plaintiffs argue that the "State Defendants" improperly revoked their foster license because no licensing investigation or interviews supported the OLCR's revocation. Dkt. #34 at 10; *see* Ariz. Admin. Code R6-5-5815 and 5816. As noted above, however, states and their agencies are not "persons" within the meaning of § 1983. *Arizonans for Official English*, 520 U.S. at 69. Plaintiffs have not sued any employees of the OLCR in their individual capacity, and have failed to show that the CPS employees named in the complaint were in any way responsible for the license revocation or the OLCR's failure to follow licensing regulations. Moreover, Defendants directly dispute that the OLCR failed to conduct an investigation. Dkt. #32 at 10. Plaintiffs have not shown as a matter of undisputed fact that any "person" named in this case violated their rights by improperly revoking their foster license.

**IT IS ORDERED** that Plaintiffs' motion for partial summary judgment (Dkt. #14) is **denied**.

DATED this 20th day of February, 2009.

_____
David G. Campbell
United States District Judge

---

[3] Additionally, Plaintiffs have not cited any legal authority indicating that CPS's alleged promises regarding adoption of the brothers made Plaintiffs "prospective adoptive parents" under Arizona law. *See* Dkt. #14 at 3, 12; *cf.* Ariz. Admin. Code R6-5-6501(35).

- 10 -