**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Don and Thelma Dillon, husband and wife, | No. CV 08-796-PHX-DGC |
| Plaintiffs, | **ORDER** |
| vs. | |
| State of Arizona; et al. | |
| Defendants. | |

Defendants have moved for summary judgment on the remaining claims in Plaintiffs' complaint. Dkt. #60. Plaintiffs oppose the motion. Dkt. #64. For reasons that follow, the Court will grant in part and deny in part the motion for summary judgment (Dkt. #60).[1]

## I.    Background.

Plaintiffs Don and Thelma Dillon underwent training in 2002 in order to "pursue fostering a child with the eventual goal of adoption." Dkt. #2 at 3.[2] In January of 2004, they received an initial license from the Office of Licensing, Certification and Regulation ("OLCR"), a subdivision of the Arizona Department of Economic Security ("DES"), which

---

[1] The requests for oral argument are denied. The parties have fully briefed the issues and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] Citations to pages in the parties' filings will be to the page numbers applied by the Court's electronic docket at the top of each page, not to the numbers at the bottom of each page of a document.

certified that they were licensed as a foster home. *Id.* at 4. Eventually, three brothers moved into their home as foster children, all of whom Plaintiffs wanted to adopt. *Id.* One of the three boys had special needs requiring placement in a therapeutic home. *Id.* at 4.

On March 29, 2005, Defendants Heermans and Hobson, two Child Protective Services ("CPS") employees, arrived at Plaintiffs' home and "demanded that Don Dillon immediately release the youngest of the three boys. The other two boys, still being at school, were taken into CPS' care/custody from school grounds." *Id.* at 5. The removal of the three boys occurred without prior notice to Plaintiffs. According to Defendants, the removal was conducted because the "children required a therapeutic level of care" and Plaintiffs were not certified as having a therapeutic home. Dkt. #61-5 at 37-39. On June 13, 2005, Plaintiffs received notice from DES that the OLCR was revoking their foster care license. Dkt. #2 at 6.

Plaintiffs filed a complaint in Arizona Superior Court on December 20, 2007, asserting five tort claims under Arizona law and violation of Plaintiffs' civil rights under 42 U.S.C. § 1983. *Id.* at ¶¶ 64-96. Defendants removed the case to this Court and filed a motion to dismiss. The Court dismissed Plaintiffs' state law claims for failure to comply with Arizona's claims notice statute. Dkt. #6; Dkt. #17 at 4-7.

On October 14, 2008, Plaintiffs filed a motion for partial summary judgment on the only remaining cause of action, violation of § 1983. Dkt. #14. The Court denied the motion because there were questions of fact as to whether Defendants "were compelled to conduct the removal without notice . . . out of concern for potential harm to the brothers" and whether Plaintiffs "were prospective adoptive parents" under applicable law. *Dillon v. Ariz.*, CV-08-796-PHX-DGC, 2009 WL 426554, *4 (D. Ariz. Feb. 20, 2009). Defendants now seek summary judgment on Plaintiffs' § 1983 claim.

**II. Legal standard.**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994).

## III. Remaining Claims and Defendants' Arguments.

Although the State of Arizona, DES, CPS, and OLCR are still listed as Defendants in this matter, it appears that Plaintiffs do not assert any claims against them. *See* Dkt. #64 at 5-6 (Plaintiffs outlining their remaining claims, and stating that they are based on "actions by the individual Defendants"). Nor could they. States and their agencies are not "persons" for purposes of § 1983. *See Arizonans for Official English v. Ariz.*, 520 U.S. 43, 69 (1997); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007). As a result, summary judgment will be granted to the State of Arizona, DES, CPS, and OLCR.

Plaintiffs contend that they state five separate § 1983 claims against the individual Defendants. Dkt. #64 at 5-6. They contend that Defendants Heermans and Hobson violated their due process rights under the Fourteenth Amendment by: (1) removing the three brothers from their foster care without prior notice or a hearing; (2) removing the brothers and terminating Plaintiffs' relationship with them as prospective adoptive parents without due process; and (3) conspiring to retaliate against Plaintiffs by forming an illegal scheme to

remove the boys and terminate Plaintiffs' foster license. *Id.* at 5. Plaintiffs also argue that Defendants Mickens, Stevens, and Peterson (collectively, "the supervisor Defendants") violated their due process rights under the Fourteenth Amendment by: (4) encouraging and tolerating practices to deprive Plaintiffs of their constitutional rights; and (5) refusing to train, supervise, or control non-supervisory Defendants Heermans and Hobson to prevent them from violating Plaintiffs' rights. *Id.* at 5-6.

Defendants make the following arguments in support of summary judgment: (1) OLCR, not Defendants, revoked the foster license, and Defendants therefore cannot be held responsible for revoking the license; (2) Plaintiffs have shown no evidence that Defendants conspired to have the foster license revoked or remove the children without due process; (3) Plaintiffs received due process when their license was revoked; (4) possession of a foster care license is not a constitutionally protected liberty or property interest; (5) Plaintiffs were not prospective adoptive parents that are entitled to prior notice of removal of foster children; (6) there is no evidence to support punitive damages; (7) Plaintiffs have provided no evidence of supervisory misconduct; and (8) all individual Defendants are entitled to qualified immunity.

Arguments (1), (3), and (4) assume Plaintiffs' claims are based on the revocation of their foster license, rather than removal of the children. Plaintiffs do not claim, however, that the license was revoked without due process of law. *See* Dkt. #64 at 5. Rather, they claim they were denied due process by the manner in which the children were removed. *Id.* As a result, the Court will not address arguments (1), (3), and (4).

Argument (2) – that Plaintiffs have shown no evidence of conspiracy – goes to the heart of Plaintiffs' third claim. The Court will consider this argument in conjunction with its discussion of that claim. Argument (5) – that Plaintiffs were not prospective adoptive parents – goes to the heart of Plaintiffs' second claim. The Court will consider this argument in conjunction with its discussion of that claim. Argument (6) concerns punitive damages, which the Court will discuss separately below. Argument (7) deals solely with supervisory

liability. The Court will consider it with claims four and five below. Argument (8) – that all individual Defendants are entitled to qualified immunity – goes to Plaintiffs' claims generally, and will be considered individually below.

**IV. Analysis.**

In cases alleging a denial of procedural due process, "the deprivation of a constitutionally protected interest 'is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.'" *Humphries v. Los Angeles*, 554 F.3d 1170, 1184 (9th Cir. 2009) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Courts assess procedural due process claims in two steps: "'the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Id.* at 1184-85 (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Liberty interests can arise both from the Constitution and from state law. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "Stated simply, 'a State creates a protected liberty interest by placing substantive limitations on official discretion.'" *Thompson*, 490 U.S. at 462 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)).

**A. Claim 1.**

Defendants argue that they are entitled to summary judgment on Plaintiffs' claim that Defendants removed the brothers without due process of law in violation of Plaintiffs' rights as foster parents. They contend that Plaintiffs cannot show that they had a liberty interest in keeping the children.

As discussed in a previous order, the Court agrees with Defendants that Plaintiffs have no liberty interest in keeping foster children based on the Constitution or federal law. *See Dillon*, 2009 WL 426554 at *5 (Court finding that the Ninth Circuit suggests that foster parents have no liberty interest in retaining their foster children).[3] Plaintiffs can, however,

---

[3] In their response to Defendants' motion for summary judgment, Plaintiffs argue extensively that foster parents have a liberty interest in retaining their children under Ninth

- 5 -

show a liberty interest based on state law. *Wilkinson*, 545 U.S. at 221.

Plaintiffs argue that they have a liberty interest under Arizona law because, under A.R.S. § 8-515.05, CPS must "inform the licensed foster parent of the department's intent to remove a child" and, if the "foster parent disagrees with the removal," CPS must hold a hearing. A.R.S. § 8-515.05. Plaintiffs argue that Defendants failed to inform them, as licensed foster parents, that the brothers would be removed from their custody. Defendants argue that there was no liberty interest because the notice requirement of A.R.S. § 8-515.05 includes an exception for situations where a child is at risk of harm or where a child needs to be placed "in a therapeutic setting." A.R.S. § 8-515.05(A). Defendants argue that the children needed to be placed in a therapeutic setting.

Defendants have failed to show or even argue that there is no material dispute of fact on whether the children needed to be placed in a therapeutic setting or whether Plaintiffs' home was therapeutic. Dkt. ##60, 71. This Court previously found a factual dispute on these issues. *Dillon*, 2009 WL 426554 at *5. Because Defendants have failed to show the absence of a dispute of fact, the Court must deny summary judgment.

**B.     Claim 2.**

Arizona law prohibits the removal of children from prospective adoptive parents without a court order. *See* A.R.S. § 8-113(A). Arizona defines a prospective adoptive parent as a "person who *has applied* to an adoption entity to become certified to adopt a child." *See* Ariz. Admin. Code R6-5-6501(35) (emphasis added). Actual certification is not required. *Id*. Plaintiffs claim that they were prospective adoptive parents of the three brothers, and therefore had a liberty interest under A.R.S. § 8-113 that was violated when Defendants removed the brothers without a court order.

Defendants argue that Plaintiffs were not prospective adoptive parents when the brothers were removed because Plaintiffs had withdrawn their adoption certification

---

Circuit law. Dkt. #64 at 7-9. The Court, however, disagrees with this argument for reasons already discussed in its order of February 20, 2009. *Dillon*, 2009 WL 426554 at *5.

1 application from one agency and had not reapplied to any other agency. Dkt. #60 at 10.
2 Plaintiffs bear the burden of showing that they were prospective adoptive parents. The only
3 evidence that they cite in support of their claim includes: (1) an "Adoptive Families CPS
4 Records Clearance" form which they filled out (Dkt. #66-2 at 2) and which, according to
5 Bonnie Slater (an administrator of Arizona Children's Association), shows that a family is
6 interested in adopting a child (Dkt. #65-6 at 3); (2) an "Adoption Progress Summary"
7 (Dkt. #66-3 at 2) which was in Plaintiffs' Arizona Children's Association file; and
8 (3) Slater's testimony that these documents were "part of the application" that Plaintiffs
9 would complete in order to be certified to adopt (Dkt. #65-6 at 6). These documents are
10 insufficient to show that Plaintiffs were prospective adoptive parents who had "applied to an
11 adoption entity to become certified to adopt a child." Ariz. Admin. Code R6-5-6501(35).
12 The documents show only that Plaintiffs started the process of applying. They do not show
13 that Plaintiffs had applied. *See* Dkt. #65-6 at 6 (Slater stating that these documents show that
14 an application was started, but that they did not show "how far it progressed"). Because
15 Plaintiffs bear the burden of showing that they had applied, and yet have not presented
16 evidence sufficient to make such a showing, Defendants are entitled to summary judgment
17 on this claim. *Celotex*, 477 U.S. at 323-24.

**C.     Claim 3.**

Plaintiffs claim that Defedants conspired to retaliate against Plaintiffs by removing
the boys and having the foster care license revoked. Dkt. #60 at 4. A conspiracy claim under
§ 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional
rights,'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001) (citation omitted), along with an
actual deprivation of constitutional rights, *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir.
2006). Defendants argue that Plaintiffs have produced "no evidence that the Defendants
conspired to cause the revocation of the foster care license or that they conspired to violate
the Dillons' constitutional rights." Dkt. #60 at 4. The Court agrees.

Plaintiffs do not present any evidence showing an agreement or meeting of the minds

among Defendants. *See* Dkt. #64 at 12-14. They state that Defendants communicated with the OLCR, causing OLCR's decision to revoke the license, but they cite no evidence in the record showing or even tending to show a meeting of the minds among Defendants. Because Plaintiffs cannot show an agreement or meeting of the minds – an element of their claim on which they would bear the burden of proof at trial – Defendants are entitled to summary judgment on this claim. *Celotex*, 477 U.S. at 322.

### D. Claims 4 and 5.

Plaintiffs claim that the supervisor Defendants encouraged and tolerated practices that deprived Plaintiffs of their constitutional rights, and refused to train, supervise, or control the non-supervisor Defendants to prevent them from violating Plaintiffs' rights. Defendants argue that a "supervisor can be liable in his individual capacity for (1) his own culpable action or inaction in the training, supervision, or control of his subordinates; (2) for his acquiescence in the constitutional deprivation; or (3) for conduct that shows a deliberate indifference to the rights of others." *McGrath v. Scott*, 250 F. Supp. 2d 1218, 1226 (D. Ariz. 2003). Defendants claim that they are entitled to summary judgment because Plaintiffs have not provided any evidence that Defendants (1) were culpable in action or inaction in the training, supervision, or control of their subordinates; (2) acquiesced in the constitutional deprivation; or (3) showed a deliberate indifference to the rights of others. Dkt. #60 at 13.

In response, Plaintiffs contend that "Defendants Mickens, Stevens, and Peterson encouraged, approved, ratified and tolerated the actions taken by Defendants Heermans and Hobson on March 29, 2005" and "grossly and recklessly failed to train Defendants Heermans and Hobson on the requirements for removal of a child from a foster home." Dkt. #64 at 15. In support of these contentions, Plaintiffs cite to paragraphs 48-58 and 60-70 of their statement of facts for evidence that precludes summary judgment.

The cited paragraphs contain extensive, non-specific citations to the record.[4] The

---

[4] Paragraphs 48-58 and 60-70 include citations to the following evidence: "Exhibit C, at pg. 303, line 7 - pg. 304, line 15," "Exhibit L, at pg. 50, lines 10-21; pg. 61, lines 4-20; and

1 Court is not obligated to "'scour the record in search of a genuine issue of triable fact.'" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted). Rather, the Court relies on "the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.* Plaintiffs' citation to 20 lengthy paragraphs and dozens of non-specific record citations does not satisfy this requirement or the Court's local rules. *See* LRCiv 56.1 (nonmoving party must cite "to the specific admissible portion of the record supporting the party's position").

The Court nonetheless has examined each piece of evidence cited in paragraphs 48-58 and 60-70. The evidence does not show that the supervisor Defendants encouraged, approved, ratified and tolerated the actions taken by Heermans and Hobson, or that they grossly and recklessly failed to train Heermans and Hobson. The cited evidence does not even show that the supervisor Defendants knew that Heermans and Hobson were planning to remove the children from Plaintiffs' care. At most, the evidence shows: (1) that supervisor Defendant Stevens would direct employees, including Heermans, on the policy for removing

---

pg. 62, lines 10-23," "Exhibit C, at pg. 305, line 21 - pg. 306, line 12," "Exhibit C, at pg. 304, line 18 - pg. 307, line 1," "Exhibit L at pg. 53, lines 8-15 and pg. 53, line 18 - pg. 55, line 12," "Exhibit Q," "Exhibit I at p. 62, lines 2-7, p. 103, lines 5-25, p. 104, lines 1-5," "Exhibit R . . . at p. 44, lines 5-19," "Exhibit M," "Exhibit 21 . . at[] Pg. 46, line 10," "Exhibit L, at pg. 50, lines 10-21; pg. 61, lines 4-20; and pg. 62, lines 10-23," "Exhibit I, at pg. 180, lines 2-10," "Exhibit I, at pg. 180, lines 11-23," Exhibit I, at pg. 185, lines 3-16," "Exhibit I, at pg. 213, lines 2-22 and pg. 214, line 1 - pg. 215, line 18 ; and . . . Exhibit N," "Exhibit I, at pg. 11, line 18 - pg. 13, line 13," "Exhibit I, at p. 201, lines 25-24 [sic] and p. 202, lines 1-13," "Exhibit R at p. 13, lines 24-25, p. 14, line 1, p. 17, lines 24-25, p. 18, lines 5-25, p. 19, lines 1-2," "Exhibit O, at pg. 10, lines 13-17 and pg. 33, line 25 - pg. 34, line 9," "Exhibit I, at pg. 192, line 22 - pg. 193, line 11," "Exhibit I, at pg. 194, lines 18-23 and pg. 195, lines 4-10," "Exhibit I, at pg. 194, lines 18-23 and pg. 195, lines 4-10," "Exhibit I, at pg. 125, line 16 - pg. 126, line 9 and pg. 126, line 17 - pg. 127, line 10," "Exhibit C, at pg. 85, line 1 - pg. 87, line 12; pg. 94, line 20 - pg. 95, line 25," "Exhibit C, at pg. 305, line 21 - pg. 306, line 12," "Exhibit C, at pg. 304, line 18 - pg. 307, line 1," "Exhibit C, at pg. 86, line 13 - pg. 87, line 5," "Exhibit I, at pg. 162, lines 13-16; pg. 164, lines 17-19; pg. 165, lines 9-16; and pg. 166, line 16 - pg. 167, line 20," "Exhibit C, at pg. 81, line 5 - pg. 82, line 9; pg. 83, line 8 - pg. 84, line 2; pg. 85, line 1 - pg. 87, line 12," and "Exhibit C, at pg. 101, line 21 - pg. 102, line 7 *and* Exhibit J, at pg. 2, line 10 - pg. 3, line 16." Dkt. #65, ¶¶ 48-58, 60-70.

foster children from foster homes (Dkt. #68-4 at 8), but that typically a person such as Heermans would not be "given formalized training on how to remove a child . . . [u]ntil a scenario comes up by which the possibility of removing a child is discussed," (Dkt. #68-4 at 8), and (2) that Hobson did not remember being trained on how to remove a child, but that doing so was not one of his job responsibilities (Dkt. #67-5 at 3). Because Plaintiffs would bear the burden at trial of proving supervisory responsibility, and have failed "to make a showing sufficient to establish the existence" of necessary elements, Defendants are entitled to summary judgment on the supervisory claims. *Celotex*, 477 U.S. at 322.

Moreover, the parties fail to cite or discuss the Supreme Court's recent statement on supervisory liability under § 1983. In *Ashcroft v. Iqbal*, — U.S. — , 129 S.Ct. 1937 (2009), the Supreme Court reinforced the rule that supervisors are not vicariously liable for the acts of their subordinates under § 1983 or its federal common-law counterpart, *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). The Supreme Court explained that "[i]n a § 1983 suit or a *Bivens* action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 129 S.Ct. at 1949. Plaintiffs' evidence certainly does not show that the supervisor Defendants themselves violated Plaintiffs' constitutional rights.

**E.     Punitive Damages.**

To obtain a punitive judgment award under § 1983, a plaintiff must prove that a defendant's conduct was motivated by "evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Defendants argue that Plaintiffs can produce no evidence of such motive, intent, or indifference. Dkt. #60 at 12. In response, Plaintiffs argue that they have presented sufficient evidence to support an award of punitive damages because Defendants did not bother to provide notice or a hearing before removing the children as required by A.R.S. § 8-515.05. Dkt. #64 at 15. Plaintiffs argue that Defendants decided to remove the children on March 24,

1  2009, but waited until March 29, 2009 to actually remove them, clearly showing that
2  Defendants had time to provide notice. Dkt. #64 at 15.

3  As discussed above, there are disputed issues of fact as to whether Defendants
4  violated a liberty interest of Plaintiffs by removing the children without notice. Similarly,
5  whether Defendants acted with "callous indifference" to Plaintiffs' liberty interest when they
6  removed the children without notice is a question of fact that must be resolved by the jury.

### F. Qualified immunity.

Defendants contend that they are entitled to summary judgment because the doctrine of qualified immunity shields them from liability. The only § 1983 claim remaining after the above determinations is Plaintiffs' first claim – that Defendants Heermans and Hobson violated Plaintiffs' rights by removing the three brothers from their foster care without prior notice or a hearing. *See* Dkt. #2 at 5 (Plaintiffs alleging that "Defendants Heermans and Hobson arrived unannounced . . . and demanded that Don Dillon immediately release the youngest of the three boys.").

Defendants Heermans and Hobson "bear[] the burden of demonstrating that immunity attaches" to their actions. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). Defendants argue that in order to find qualified immunity, the Court need only find that Defendants made a reasonable mistake regarding what the law required. *Saucier v. Katz*, 533 U.S. 194, 205 (2001). Even assuming Defendants violated Plaintiffs' rights by removing the brothers from their home without notice, Defendants argue that they are entitled to qualified immunity because they removed the brothers based on the opinions of qualified professionals who determined that the boys needed to be placed in a therapeutic setting which Plaintiffs could not provide. Dkt. #60 at 14.

Defendants have not established as a matter of undisputed fact, however, that they removed the brothers based on the opinions of qualified professionals. Defendants point to the deposition of supervisor Defendant Peterson, who stated that several CPS employees had a meeting to evaluate whether the brothers needed a higher level of care. Dkt. #61-5 at 21.

Defendants also point to the deposition of supervisor Defendant Stevens, who stated that she and several other professionals determined that the "children required a therapeutic level of care, and Mr. Dillon was not a therapeutic foster home." *Id.* at 37-39. But this testimony does not show that Heermans and Hobson actually relied on this determination when they removed the children. A question of fact remains with respect to the reasons for Heermans' and Hobson's actions, precluding summary judgment on qualified immunity.

**IT IS ORDERED:**

1. Defendants' motion for summary judgment (Dkt. #60) is **granted in part and denied in part**. The motion is granted with respect to all claims against the State of Arizona, DES, CPS, OLCR, and Defendants Mickens, Stevens, and Peterson. The motions is also granted with respect to all claims against Defendants Heermans and Hobson except Claim 1 and the request for punitive damages.

2. The Court will set a final pretrial conference by separate order.

DATED this 6th day of April, 2010.

_____
David G. Campbell
United States District Judge